UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| WILLIAM HARDESTY, JR., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Cause No. 1:15-cv-283 |
| NANCY BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

William Hardesty, Jr., has a history of lower back problems, bipolar depression, anxiety, and severe headaches. In the fall of 2012, he applied for disability insurance benefits and supplemental security income, alleging he became disabled on March 28, 2012 when he re-injured his back at work. (A.R. at 204–217.[2]) His application was denied initially and on reconsideration by an Administrative Law Judge who found him capable of sedentary work and therefore not disabled. (*Id.* at 11, 16, 27.) Hardesty argues that the ALJ made a host of errors, but I will focus on just one of them— his claim that the ALJ erred by failing to consider whether and/or articulate why Hardesty's back problems alone or together with other impairments did not meet or equal Listing 1.04(A). Because I agree that the ALJ erred, this case will be remanded.

---

[1] Federal Rule of Civil Procedure 25(d) provides for the automatic substitution of Nancy Berryhill for her predecessor, Carolyn Colvin.

[2] I will cite to the administrative record, which appears at docket entry 12, by reference to the Social Security Administration's Bates stamp number.

**Background**

At the time of his hearing before the ALJ on February 10, 2014, Hardesty was thirty-one years old and lived with his wife and three sons in a one-story home in Fremont, Indiana. (*Id.* at 38.) He had stopped working in mid-2012 due to back pain and was supported by his wife. (*Id.* at 38–39, 41.) Prior to that, he had been regularly employed for fifteen years, most recently at the Potawatomi Inn in Pokagon State Park doing banquet set up. (*Id.* at 41–45, 61, 228.)

But Hardesty's back problems started long before he stopped working in 2012. His medical records suggest he sought treatment for back pain as early as 2004, when he was 23 years old. (*See*, *e.g.*, *id.* at 400–1, 470–71.) In 2011, Hardesty severely herniated the disc at L5–S1. (*Id.* at 360, 403, 558.) After that injury, he tried physical therapy, spinal injections, and pain relievers, but they failed to provide sufficient relief from the pain he was experiencing and so, on October 12, 2011, he underwent surgery to remove the disc. (*See id.* at 42, 349, 360, 403, 558.)

He returned to work in late 2011 or early 2012, but just a few months later he injured his back again, this time while moving a heavy ping-pong table at work. (*Id.* at 219, 333, 363.) An MRI taken shortly thereafter showed "severe degenerative changes at L4–5 and L5–S1 with recurrent disc herniation and L5–S1 and displacement of the S1 nerve root." (*Id.* at 494.) Hardesty again first sought out conservative treatments, including physical therapy, spinal injections, and pain medication, but ultimately he decided to undergo a second back surgery because of the pain. (*Id.* at 333, 380, 438, 493-

494, 578–79.) The second surgery was conducted in June 2013, during which Hardesty's surgeon removed a "large recurrent disc fragment at L5–S1" and fused the vertebrae in spinal segment L4–sacrum. (*Id.* at 578.)

Unfortunately, the June 2013 surgery did not resolve Hardesty's back problems. An x-ray of his lumbar spine taken about a month after the second surgery showed degeneration at the sacroiliac joints and hips and some spondylosis at L3–L4. (*Id.* at 486.) His treating physicians noted lumbosacral paraspinal muscle spasms and positive straight-leg raising tests on both sides in both November and December 2013 and continued to prescribe him powerful muscle relaxers and nerve medications. (*Id.* at 504–7; *see also id.* at 46.) And, at his hearing before the ALJ, Hardesty testified that even after the second surgery, he continued to have significant pain that was difficult to mitigate, had trouble standing, walking, and getting out of bed, and found it painful to sit for more than 20 or 30 minutes in one position. (*Id.* at 46–49, 59.) He also reported that he always needed a cane to stand and walk and that he had four or five bad days a month (for example, after driving too much), on which he could not get out of bed or get dressed without help. (*Id.* at 48, 54–56; *see also id.* at 61–62.)

Hardesty applied for disability insurance benefits and supplemental security income on September 24, 2012, alleging an onset date of March 28, 2012, when he injured his back the second time. (*Id.* at 11.) The ALJ held a hearing and concluded that Hardesty was not disabled. (*Id.* at 11–32.) Most relevant to this appeal, the ALJ found at Step Two that Hardesty suffered from two severe impairments, headaches and

degenerative disc disease of the lumbar spine with history of left leg injury and left leg radicular pain, and she found at Step Three that he had no impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart. P, Appendix 1. (*Id.* at 13–14.)

## Discussion

An ALJ's decision should be affirmed so long as the ALJ applied the correct legal standard and substantial evidence supports the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (internal quotation marks and citations omitted).

A claimant is presumptively disabled and eligible for benefits if he has an impairment or a combination of impairments that meets or equals the severity of a Listed Impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1523(c); *Browning v. Colvin,* 766 F.3d 702, 706 (7th Cir. 2014); *Golembiewski v Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) (requiring the ALJ to consider the aggregate effect of severe and non-severe ailments). "In considering whether a claimants' condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal quotation marks and citation omitted).

Hardesty argues that the ALJ erred at Step Three by failing to address (or even mention) Listing 1.04(A). Instead, the ALJ referred to the musculoskeletal impairments

in Listing 1.00 only generally, and her analysis in that regard was meager. Here's what the ALJ said in total:

> The medical evidence related to the claimant's back and lower extremity complaints does not support a finding that he is unable to ambulate effectively . . . or unable to perform fine/gross movements effectively[.] In addition, the evidence is unsupportive of the medical criteria contemplated within Listing 1.00 (musculoskeletal) for any of the listed conditions.

(A.R. at 14.)

The ALJ's curt treatment of the 1.00 Listings may or may not have been adequate to explain why Hardesty's condition does not meet any impairment that requires an inability to ambulate effectively or to perform fine/gross movements effectively (e.g., Listing 1.04(C)). But that's neither here nor there because the ALJ's two sentence analysis provides no insight into why Hardesty's condition doesn't meet or equal Listing 1.04(A), which has altogether different requirements. Here's the Listing:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in comprise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*See* 20 C.F.R. § 404(P), App. 1, ¶ 1.04 (A). Without any discussion of the medical evidence in the context of this listing, I have "grave reservations as to whether [the

5

ALJ's] factual assessment addressed adequately the criteria of the listing[,]" and I am left without the necessary means to review the ALJ's conclusion. *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002) (internal citations omitted); *accord Brindisi ex rel Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir. 2003).

The Commissioner counters that the ALJ wasn't required to say *anything* about Listing 1.04 because reviewing physicians hired by the agency "determined that Plaintiff's primary impairment, 'Disorders of the Back-Discogenic and Degenerative,' did not meet any listed impairment" and their signatures "confirm that they also considered medical equivalence." (DE 29 at 3-4.) Frankly, I don't know why the Commissioner believes that to be the case. The Disability Determination Explanation that Dr. Sands completed at the time of initial review state that he considered two listings: Listing 12.06 (Anxiety Disorders) and Listing 1.02 (Dysfunction-Major Joints). (A.R. at 90.) Like the ALJ's opinion, Dr. Sands' explanation never mentions Listing 1.04 or analyzes whether Hardesty's back condition meets or equals it. (*See generally id.* at 85-93.) The same is true of the Disability Determination Explanation that Dr. Ruiz completed upon reconsideration—it never mentions Listing 1.04, and it does not analyze or explain why Hardesty's back condition doesn't meet or equal the severity of that Listing. (*Id.* at 110.)

Nor do the cases cited by the Commissioner counsel in favor of affirming the ALJ's decision despite the oversight. In *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012), the Seventh Circuit affirmed the ALJ's opinion that the claimant's impairments didn't

6

meet or equal Listing 1.04, based upon the opinions of two agency-hired reviewing physicians. *Id.* at 867. But, there, the ALJ's opinion "specifically contemplated Listing 1.04' and "observed that the evidence did not satisfy the Listing's criteria." *Filus v. Astrue,* No. 1:11-cv-106, 2011 WL 6826394, at *8 (N.D. Ind. Dec. 28, 2011). Further, there was no "evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." *Id.* Here, the opposite is true. The ALJ's opinion does not contemplate Listing 1.04, and there *is* evidence that Hardesty's back condition has some of the characteristics set out in Listing 1.04(A).

The other cases cited by the Commissioner are similarly inapposite. In *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004), the Seventh Circuit affirmed an ALJ's opinion finding the claimant's impairments did not meet or equal any of the listings because "there was *no evidence* which would support the position that [the claimant] met or equaled the listing." 357 F.3d at 701 (emphasis in original); *see also id.* at 702 (noting a "dearth of documentary medical evidence" from the claimant's alleged onset date to his last insured date). Likewise, in *Knox v. Astrue*, 327 Fed. App'x 652 (7th Cir. 2009), the Seventh Circuit affirmed an ALJ's decision, even though the ALJ did not identify any specific listing or explain why the claimant's back condition didn't equal a listing, because the claimant "did not present *any* medical evidence supporting the position that his impairments meet or equaled a particular listing." 327 Fed. App'x at 655 (emphasis added) (citation omitted).

Here, as I mentioned, there is evidence that Hardesty's back condition had many

7

of the characteristics set out in Listing 1.04(A). That evidence includes medical records documenting the following, all after the alleged date of onset: (1) nerve root displacement or compression (*see, e.g.,* A.R. at 463 (noting MRI "[f]indings consistent with a small disc fragment on the left at L5-S1 . . . surrounded by enhancing scar tissue and . . . causing displacement of the left S1 root"); *id.* at 493–94 (noting "displacement of the S1 root," as well as "severe degenerative changes" and "recurrent disc herniation"); (2) spinal blocks and epidural injections for pain (*see, e.g., id.* at 327, 406–7); (3) restricted range of motion (*see, e.g., id.* at 333–34, 382, 438, 493–94); (4) positive straight-leg raise tests on one or both sides or positive root tension signs (*see, e.g., id.* at 333–34, 493–94, 504–5, 506–7, 510–11, 512); (5) decreased strength (*see, e.g., id.* at 333–34); (6) reflex loss (*see, e.g., id.* at 494); (7) hypesthesia (sensory loss) (*see, e.g., id.*); and (8) lumbosacral paraspinal muscle spasms (*see, e.g., id.* at 504–5, 506–7, 510–11, 512).

This evidence may not have satisfied all the requirements of Listing 1.04(A), but it should have prompted the ALJ to consider whether it equaled the Listing, particularly since Hardesty's attorney argued that it did at the hearing (*See id.* at 37; *see also* 20 C.F.R. § 404.1526.) The ALJ failed to do that, and so a remand is necessary to permit her to further assess the evidence and develop the record. The ALJ may yet again find that Hardesty's lower back problems, alone or in combination with other impairments, do not meet or equal Listing 1.04(A), or do not meet or equal the listing for the entire period since the alleged date of onset, but, if that's the case, then she must say so and explain why. Because remand is already required, I will not address Hardesty's

remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the decision of the ALJ is **REVERSED**, and this matter is **REMANDED** for further consideration consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of the plaintiff and against the defendant.

**SO ORDERED.**

ENTERED: March 29, 2017.

s/ Philip P. Simon  
JUDGE, UNITED STATES DISTRICT COURT